## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

RODNEY MILLS,

                **Plaintiff,**

    **v.**                              **CIVIL ACTION NO.  2:21-cv-185**

CITY OF NORFOLK, et al.,

                **Defendants.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendants', City of Norfolk ("Norfolk" or "the City") and Jeffrey Wise ("Chief Wise" or "Wise") ("Defendants" collectively), Motions for Summary Judgment and Memorandums in Support pursuant to Federal Rule of Civil Procedure 56, as well as Defendants' Motions to Sever and for Misjoinder ("Motions to Sever") and Motions to Dismiss. The Court has reviewed the motions, accompanying memorandums, and exhibits. The Court has also reviewed Rodney Mills' ("Plaintiff") responses to the motions and Defendants' replies. After reviewing the parties' filings, the Court finds that a hearing is not necessary, and these matters are ripe for judicial determination. The Court **FINDS** that there is no dispute as to any material fact, and Defendants are entitled to judgment as a matter of law. Accordingly, the City of Norfolk and Jeffrey Wise's Motions for Summary Judgment are **GRANTED** and their Motions to Sever and Motions to Dismiss are **DISMISSED** as moot.

## I.    PROCEDURAL HISTORY

This action originated in the Eastern District of Virginia on April 12, 2021. Compl., ECF No. 1. Plaintiff filed the instant Amended Complaint on August 30, 2021, alleging the following:

**Count I:**    Racial discrimination, pursuant to the Equal Protection Clause and 42 U.S.C. §§ 1981, 1983, against Jeffery Wise for denying Plaintiff's request

for a waiver to compete for the position of Fire Battalion Chief during the 2019 Norfolk Fire & Rescue promotion process;

**Count II:**     Retaliation, pursuant to 42 U.S.C. §§ 1981, 1983, against Norfolk for calling Plaintiff while he was on vacation and subjecting him to a drug test after the instant suit was filed; and

**Count III:**    Hostile work environment, 42 U.S.C. §§ 1981, 1983, against Norfolk for "ostraciz[ing] and shun[ing]" Plaintiff based on his race and in retaliation for the instant lawsuit. Am. Compl., ECF No. 22.

Norfolk filed its Motion to Dismiss with accompanying memoranda on September 13, 2021. Norfolk Mot. Dismiss, ECF No. 25; Norfolk Mem. Supp. Mot. Dismiss, ECF No. 26. Plaintiff responded to Norfolk's Motion to Dismiss on September 27, 2021. Pl.'s Mem. Opp. Norfolk Mot. Dismiss, ECF No. 28. Norfolk replied on October 4, 2021. Norfolk Mot. Dismiss Reply, ECF No. 30. Wise filed his Motion to Dismiss with accompanying memoranda on October 8, 2021. Wise Mot. Dismiss, ECF No. 31; Wise Mem. Supp. Mot. Dismiss, ECF No. 32. Plaintiff responded to Wise's Motion to Dismiss on October 22, 2021. Pl.'s Mem. Opp. Wise Mot. Dismiss, ECF No. 42. Wise replied on October 28, 2021. Wise Mot. Dismiss Reply, ECF No. 44.

Defendants filed Motions to Sever with accompanying memoranda on October 8, 2021. Norfolk Mot. Sever, ECF No. 36; Norfolk Mem. Supp. Mot. Sever, ECF No. 37; Wise Mot. Sever, ECF No. 34; Wise Mem. Supp. Mot. Sever, ECF No. 35. Plaintiff responded to the Motions to Sever on October 22, 2021. Pl.'s Mem. Opp. Norfolk-Wise Mot. Sever, ECF No. 41. Defendants filed their rebuttals on October 28, 2021. Defs.' Mot. Sever Rebuttal, ECF No. 43.

Defendants filed the instant Motions for Summary Judgment on October 8, 2021. Norfolk Summ. J. Mot., ECF No. 45; Norfolk Mem. Supp. Summ. J. Mot. ("Norfolk Mem. Supp."), ECF No. 46; Wise Summ. J. Mot., ECF No. 47; Wise Mem. Supp. Summ. J. Mot. ("Wise Mem. Supp."), ECF No. 48. Plaintiff responded on December 22, 2021. Pl.'s Mem. Opp. Norfolk Summ. J. Mot. ("Pl.'s Mem. Opp. Norfolk"), ECF No. 49; Pl.'s Mem. Opp. Wise Summ. J. Mot. ("Pl.'s Mem.

Opp. Wise"), ECF No. 50. Defendants replied on December 28, 2021. Norfolk Reply, ECF No. 54; Wise Reply, ECF No. 52.

## II.    FACTUAL HISTORY

**Plaintiff's Background with Norfolk Fire and Rescue**

In 1996, Plaintiff was hired as a Recruit with the City of Norfolk's Fire and Paramedical Services, which later became Norfolk Fire and Rescue ("NFR"). Pl.'s Oct. 25, 2021 Dep. Tr. ("Pl. Dep. Tr."), ECF No. 86, 16:20–17:13, 70:20–23. After serving as a Recruit for one year, Plaintiff was promoted to Firefighter. *Id.* at 16:20–17:13. Plaintiff's first significant promotion after becoming a Firefighter was obtaining a paramedic certification in or around 1997, which a white Battalion Chief, Chief Fentress, encouraged him to pursue. *Id.* at 35:6–35:8, 36:1–36:22.[1]

In 2009, Plaintiff pled guilty to filing a false police report and misdemeanor hit-and-run with a train. *Id.* at 18:23–19:22, 21:3–22:23, 23:20–24, Ex. 1 ("Plea Acceptance Sheet"), Ex. 2 ("Grand Jury Indictment"). The police report was false because Plaintiff told police that someone had stolen his car prior to the accident with the train; however, Plaintiff was actually the person driving his car at the time of the accident. *Id.* at 24:14–25:19. Following the hit-and-run and criminal charges, NFR terminated Plaintiff, but he was ultimately re-instated to his position by a grievance panel after serving a six-month suspension without pay. *Id.* at 26:19–27:1, 28:2–28:25, 30:2–31:12, Ex. 3 ("City of Norfolk Grievance Reply Form"), Ex. 4 ("Termination Recommendation Documentation").

On November 22, 2013, Wise wrote an intra-departmental memorandum to the Norfolk City Manager, Marcus Jones, recommending Plaintiff for promotion to Fire Lieutenant. Jeffrey

---

[1] NFR has the following rank structure, with Recruit being the lowest rank and Fire Chief being the highest rank: Recruit, Firefighter (with some sub-specialties), Paramedic, Lieutenant, Captain, Battalion Chief, Assistant Chief, Deputy Chief, and Fire Chief. Pl. Dep. Tr. at 33:6–16.

Wise Affidavit ("Wise Aff.") ¶ 22, Ex. 3. Plaintiff was promoted to Fire Lieutenant in December of 2013 on his second attempt to obtain that rank. Pl. Dep. Tr. at 39:14–40:13, 44:21–45:8. Plaintiff did not score well on his first attempt at promotion to Fire Lieutenant due to a divorce he was going through at the time, and his final score was not favorable. *Id.* at 44:21–45:1–6. Not every employee who participates in the promotional process is ultimately promoted. *Id.* at 53:14–17.

Plaintiff does not have personal knowledge of how many other people applied or were promoted to Fire Lieutenant in 2013. *Id.* at 52:12–18, 53:4–10. He does not know how many people, or of what races, participated in promotional processes in 2010 or before. *Id.* at 77:9–25. He does not know whether the promotional process had the same components (assessment, test, and interview) in 2010 and before. *Id.* at 78:1–6.

For one year, from 2016 until his promotion to Fire Captain in 2017, Plaintiff served in the Administration Department working on recruiting and public affairs. Pl. Dep. Tr. at 64:4–13, 69:15–70:6. He did not have access to other employees' personnel files during this time. *Id.* at 70:7–19. He also did not have access to NEOGOV, the system that stores NFR job applications. *Id.* at 70:12–19.

On May 30, 2017, Wise wrote an intra-departmental memorandum to the Norfolk City Manager, Douglas L. Smith, recommending Plaintiff (Black male), William Raney (white male), Michael Murphy (white male), Jarrod Sergi (white male) and Carrie Jones (white female) for promotion to the position of Fire Captain. Wise Aff. ¶ 23, Ex. 4. Per the May 30, 2017 recommendation, Wise promoted Plaintiff, Raney, Murphy, Sergi, and Jones to the rank of Fire Captain on June 13, 2017, with Plaintiff being promoted to the highest salary among them. Pl. Dep. Tr. at 54:20–55:2; Wise Aff. ¶¶ 24–25, Ex. 4.

4

Plaintiff does not know how many people participated in the 2016 promotion process, which was the process through which Plaintiff earned his 2017 promotion to Fire Captain. Pl. Dep. Tr. at 55:3–6, 76:21–25. Plaintiff does not know if everyone who applied for the 2016 promotional process took the appliable test on the same day. *Id.* Furthermore, Plaintiff does not know how he ranked on the candidate list based on his test and assessment score. *Id.* at 61:6–17. A total of five people were promoted to Fire Captain with Plaintiff in June 2017. *Id.* at 55:7–12, 61:18–22. Plaintiff does not have personal knowledge of how many other people were promoted to Fire Captain from the 2016 promotion process. *Id.* at 61:23–62:9.

When Plaintiff was promoted in 2013, Chief Wise commented to the Norfolk City Manager without Plaintiff's knowledge that Plaintiff "demonstrated growth and maturity," "[has] always been an excellent performer on the street," would be "an inspiration to others," and would "support [Wise's] efforts to move the Department forward through professionalism and respect towards all." *Id.* at 207:8–208:15, Ex. 17; Wise Aff. ¶ 22, Ex. 3. When Plaintiff was promoted in 2017, Wise commented to the Norfolk City Manager without Plaintiff's knowledge that Plaintiff's "best captain quality is his determination to achieve his goals," which "resonates to his subordinates." Pl. Dep. Tr. at 208:16–209:7; Wise Aff. ¶ 23, Ex. 4. Wise also stated in his recommendation that Plaintiff "has a long track record of his willingness to assist the members of NFR and the citizens of Norfolk through internal outreach to recruits and external outreach to the community." *Id.*

Plaintiff does not know how many Black Americans have worked for NFR since 1996 and has not seen the personnel files for other Black NFR employees. Pl. Dep. Tr. at 70:24–71:12. Since starting with NFR, other than employees who took the same tests at the same time as he did, Plaintiff does not have personal knowledge of who applied for which positions in NFR. *Id.* at

71:13–72:17. Plaintiff is also not familiar with how promotions or other events are documented in an employee's personnel file by NFR's Department of Human Resources. *Id.* at 129:1–15.

**The General Process for Promotions in NFR**

A list of people eligible for promotion is created during the promotional process based on a combined score from an exam, an assessment, and longevity points calculated by the Civil Service Commission. *Id.* at 55:13–56:5; 58:2–15; Wise Aff. ¶ 14. The candidates' score may also incorporate a grade for their personal history portfolio ("PHP"). *Id.* The assessment is administered through Morris & McDaniel, an outside consultant who enlists evaluators from other jurisdictions. Pl. Dep. Tr. at 45:9–46:3. Plaintiff has served as an evaluator in the assessment process for other jurisdictions, such as Hampton, Suffolk, and Chesapeake. *Id.* at 46:4–47:16.

Candidates are ranked based on their combined score, then selected for interviews when a position becomes available. *Id.* at 56:5–14; Wise Aff. ¶¶ 14–15. The ranked list of candidates remains in effect for up to two years. Pl. Dep. Tr. at 56:19–57:12. Following the "rule of fives," five candidates are interviewed for one open position, then one more candidate is interviewed for each additional job opening (e.g. six people are interviewed for 2 openings, and seven people are interviewed for 3 openings). *Id.* at 56: 12–18; 59:20–60:17; Wise Aff. ¶ 15.

**The 2019 Promotional Process and Plaintiff's Request for a Waiver**

For promotion to the position of Battalion Chief during the 2019 promotional process, an applicant must have had at least two years of experience as Fire Captain by April 22, 2019, the eligibility cut-off date for that year's promotional process. Pl. Dep. Tr. at 146:2–4, 183:1–185:10, Ex. 12 ("2019 Promotional Process Memo"); Wise Aff. ¶¶ 27–28. March 1, 2019 was the first date an employee would be able to apply through the NEOGOV portal, and the application period closed on April 22, 2019. *Id.* at 194:23–195:16, Ex. 16.

6

In December 26, 2018, prior to the eligibility date for the 2019 promotional process being announced, Plaintiff emailed Wise to request permission to take the 2019 promotional exam for Battalion Chief. Wise Aff. ¶¶ 29–30, 32–34, Ex. 6, 7. At the time of Plaintiff's request, NFR senior staff were still finalizing the details of the 2019 promotional process, including the eligibility cut-off date. Pl. Dep. Tr. at 149:7–15, 150:13–20. However, after conversing in December 2018 with Deputy Chief Brooks, one of Plaintiff's mentors in NFR, Plaintiff suspected that the 2019 eligibility cut-off date would be in April, instead of June like past years. *Id.* at 146:13–148:10.[2] Accordingly, Plaintiff stated in his email to Wise that he was requesting permission to take the exam because, given that Plaintiff was promoted to Fire Captain on June 13, 2017, he would not have two years of experience as Fire Captain by April 2019. Wise Aff. ¶ 29, Ex. 6. After an exchange of emails with Plaintiff, on January 3, 2019, Wise sent Plaintiff an intra-department correspondence sheet informing Plaintiff that he would not grant his request. *Id.* ¶¶ 29–30, 32–34, Ex. 6, 7.

Plaintiff alleges that a former Chief ("Chief Johnson") showed him a waiver document, which Chief Johnson received from the Norfolk City Manager, that allowed Chief Johnson to take the Battalion Chief test without two years of experience in his current position. Am. Compl. ¶¶ 17–22; Pl. Dep. Tr. at 100:4–18, 101; Wise Aff. ¶ 30, Ex. 7. Plaintiff referenced the document in his email request for a waiver to Wise in December 2018; however, Plaintiff did not have a copy of the waiver and Chief Johnson was no longer a member of the department when Plaintiff began in 1996. Pl. Dep. Tr. at 99:17–25, 100:4–18; Wise Aff. ¶ 29, Ex. 7. Plaintiff does not know Chief Johnson's first name nor the year in which the waiver occurred. Pl. Dep. Tr. at 101:9–23. Plaintiff

---

[2] Deputy Chief Brooks' duties did not include the promotional process as Chief Brooks was in charge of operations. Pl. Dep. Tr. 315:3–17.

does not know of anyone else who has requested the type of waiver that he requested during his time with NFR. *Id.* at 102:12–103:5.

Wise had not previously granted permission or "waivers" to any other NFR employees to participate in a promotional process without meeting the eligibility requirements for years of experience or other eligibility requirements set forth in the initial correspondence announcing the corresponding year's promotional process. Wise Aff. ¶¶ 32, 33. Prior to retiring, effective February 1, 2019, Wise did not grant any of the five fire captains promoted on June 13, 2017, including Plaintiff, permission to sit for the Battalion Chief promotional examination in 2019. *Id.* ¶¶ 29–30, 32, Ex. 6–8. Prior to his retirement, Chief Wise did not grant any NFR personnel permission to sit for a promotional examination who would not have had the required years of experience by whatever eligibility date was established or who would not have met any other eligibility requirements at the start of each promotional process, regardless of how the Civil Service Commission calculated longevity points. *Id.* ¶¶ 30, 33–34. No applications for the 2019 promotional process were submitted by NFR personnel prior to Chief Wise's retirement, which was effective February 1, 2019. *Id.* ¶ 31.

Plaintiff does not know who decided that the eligibility date for the 2019 process would be in April, nor when or why the decision was made. Pl. Dep. Tr. at 154:12–15, 155:4–10, 158:10–14, 272:18–25. The 2019 promotional process was consistent with the timeframe Plaintiff anticipated based on his December 2018 conversation with Chief Brooks, which was prior to his request for a waiver. *Id.* at 157:14–158:2, Ex. 12. Plaintiff does not have any information indicating that the 2019 promotional process date was changed intentionally to prevent him from being promoted. *Id.* at 149:16–150:1, 163:10–16, 164:11–13, 292:8–18, 301:1–4, 302:2–8, 319:3–6.

The April eligibility cut-off date in the 2019 promotional process memo eliminated Plaintiff from taking part in that process. *Id.* at 145:8–15, Ex. 12. Employees who were promoted to Captain at the same time as Plaintiff fell into the same category of not having two years of experience by the April 2019 eligibility date. *Id.* at 155:11–18; Wise Aff. ¶ 32. NFR employees, across races and genders (including Carrie Jones, a white female, and several white males) were in the same situation as Plaintiff because they did not have two years of experience prior to the eligibility date, and those employees were impacted in the same way as Plaintiff by the 2019 promotional process memo. Pl. Dep. Tr. at 155:11–156:4, 158:3–9, 160:12–161:4, 162:13–163:5, 163:17–164:10, 273:23–274:3, 275:2–7, 294:13–296:14; Wise Aff. ¶ 32.

Plaintiff does not know whether any of the other employees in his situation had asked to be allowed to participate in the 2019 process. *Id.* at 177:12–14,178:1–13. No one in Plaintiff's situation—including Carrie Jones and the other white males—were allowed to sit for the Battalion Chief promotional exam. *Id.* at 177:12–14,178:1–13. If Plaintiff had been allowed to take the test for the 2019 Battalion Chief promotional process, he would not have had the two years of experience as a Captain as of April 22, 2019, as required by the 2019 promotional process memo. *Id.* at 159:15–160:1, Ex. 12.

**Personal History Portfolios in the 2019 Battalion Chief Process**

The Battalion Chief candidates in 2019 were allowed to re-submit their personal history portfolios ("PHPs"). *Id.* at 170:6–18. They were not allowed to re-take any promotional examinations. *Id.* at 169:17–170:10. Plaintiff does not know why applicants were allowed to resubmit their PHPs, and he has never been part of a promotional process that involved a PHP. Pl. Dep. Tr. at 171:12–173:2–175:25, Ex. 13. The only people allowed to re-submit PHPs were the

people who participated in the 2019 Battalion Chief promotional process. Pl. Dep. Tr. at 176:3–12.

Chief Brooks, who was the acting Fire Chief after Chief Wise retired, allowed employees who had submitted PHPs to resubmit them because it was determined after the April 29, 2019 due date that there was confusion regarding the line spacing in the PHPs. City of Norfolk Deposition Transcript ("Norfolk Dep. Tr.") 38:12–14, 60:2–62:18. Following discussions with and guidance from Norfolk's outside consultant, Morris & McDaniel, who administered the 2019 testing and application process for NFR, it was determined that everyone who had submitted a PHP would be informed that, if he or she wished to review his or her PHP to ensure that it was correct, he or she could do so. *Id.* The individuals were not advised on what may have been correct or incorrect about their particular PHP. *Id.* The individuals were given a specific date by which to review their PHP and submit any corrections. *Id.*

**Education Requirements for Battalion Chief in 2019**

NFR employees were advised in March 2016 that, effective for the 2018 promotional process, the educational requirement for Battalion Chief was an "Associate's degree or equivalent course work hours (minimum of 60 hours) connected with the active pursuit of a Bachelor's degree." Pl. Dep. Tr. at 179:9–180:12, Ex. 15. The education requirement was revised in February 2019 to require an "Associate's degree or equivalent course work hours (minimum of 60 hours)." *Id.* at 180:21–23; 190:24–192:1, 198:18–25, Ex. 12, 14. Plaintiff is not familiar with anyone who would fit the 2016 education criteria and not fit the 2019 education criteria. *Id.* at 194:1–10. Plaintiff does not know why the criteria changed and has no evidence of why the change occurred. Pl. Dep. Tr. at 194:12–22, 314:6–19. The educational requirement language for Battalion Chief

were changed effective February 2019 because of difficulty with determining what "acting in pursuit of a bachelor's degree" meant. Norfolk Dep. Tr. at 22:5–23:1.

**Promotion of Others within NFR**

Since 1990, Norfolk has only promoted white males to the positions of Fire Chief and Deputy Fire Chief. Norfolk's Interrogatory Answers ("Norfolk Int. Answers") at #1. Since 1990, Norfolk has promoted 37 employees to the position of Battalion Chief. Norfolk Int. Answers at #2. Of the 37 employees promoted, only 4 were Black. *Id.*

Since Plaintiff began with NFR in 1996, he has not spoken to 50 Black employees about their applications for promotion to Fire Battalion Chief, as alleged in his Amended Complaint. Pl. Dep. Tr. at 78:12–79:17. Plaintiff does not know how many Black employees applied for Battalion Chief since 1996. *Id.* at 79:1–14. Plaintiff has identified four Black employees who were promoted to Battalion Chief since 1996: Chief Carroll (who is now an Assistant Chief), Chief Langley, Chief Williamson, and Chief Sayes. *Id.* at 79:16–22; 82:16–19; 84:9–12. To be promoted to Battalion Chief, the applicant had to be a Captain, and those four were Black Captains. *Id.* at 80:1–6. Plaintiff knows that there have been other Black Captains but does not know if they applied for promotion to Battalion Chief. *Id.* at 81:10–82:5.

Chief Sayes was the first Black Captain promoted to Battalion Chief that Plaintiff remembers. *Id.* at 88:20–89:1. Chief Sayes and Chief Carroll are the only Black Assistant Chiefs that Plaintiff recalls since he began with NFR. Pl. Dep. 89:5–12. Two of the four Black Battalion Chiefs that Plaintiff identified were promoted to Assistant Chief, and the third (Chief Langley) was not yet eligible for that promotion at the time of Plaintiff's recollection. *Id.* at 89:25–90:10.

Plaintiff did not have any conversations with Chief Langley about his experiences in the promotional process, despite having Chief Langley as a social friend and seeing him once every

11

other month. *Id.* at 92:19–95:9. Plaintiff does not recall any details about any conversations he had with Chief Williamson about the promotional process, despite having lunch with Chief Williamson once every three to four weeks. *Id.* at 95:5–96:13. Plaintiff does not recall the details of any conversations with Chief Williamson about the promotional process. *Id.* at 96:5–13. Similarly, Plaintiff has not talked to Chief Carroll about the promotional process. *Id.* at 96:14–19. Plaintiff does not have any first-hand knowledge of Chief Sayes' promotional process. Pl. Dep. Tr. at 98:17–99:13. Plaintiff also does not have first-hand knowledge of Chief Johnson's promotion to Battalion Chief before Plaintiff joined NFR. *Id.* at 99:13–100:3. There are approximately 15 or 16 Battalion Chief positions at NFR. *Id.* at 85:18; 86:6–16. Before Chief Williamson left NFR in February or March 2021, three of the Battalion Chiefs at NFR were Black: Chief Williamson, Chief Langley, and Chief Carroll. *Id.* at 86:23–87:1.

**Plaintiff's Drug Test**

Norfolk's drug testing process is administered through a third-party contractor, NowCare, who designs and implements the process for determining who is randomly selected for monthly testing. Norfolk Dep. Tr. at 75:7–76:15; Norfolk Reply at Ex. 1 ("Norfolk Substance Abuse and Drug Free Workplace Policy"). NowCare drug tests in a variety of other situations as well, i.e. pre-employment screening, fit-for-duty tests, and post-accident tests. Pl. Dep. Tr. at 205:3–16.

NFR employees are subject to testing on a random basis as determined by the Fire Chief. Norfolk Dep. Tr. at 79:8–80:6. The Fire Chief uses NowCare to determine who is selected and does not have any input into who NowCare selects using NowCare's random selection methods, nor does the Fire Chief have any oversight of the specific selection process that NowCare uses to provide him with names for random drug testing. *Id.* at 82:15–83:5. The Fire Chief does not make any personal selections for random testing without input from NowCare and reasonable suspicion

that is verified by other supervisory personnel or written documentation. *Id.* at 76:23–78:7, 84:2–5; Norfolk Responses to Interrogatories at #16; Norfolk Amended Responses to Requests for Production at #2; Brooks Deposition Transcript ("Brooks Dep. Tr.") 30:11–31:10.

Plaintiff does not know how NowCare's selection process takes place. *Id.* at 300:19–23. Based on a "hunch," Plaintiff assumes that he was selected for a drug test because he filed a lawsuit. *Id.* at 204:14–17; 245:2–9. Plaintiff does not know whether Chief Brooks had anything to do with the drug test he was administered. *Id.* at 246:2–5, 297:15–298:22. Plaintiff passed the drug test. *Id.* at 205:16–206:9.

**Plaintiff's Verbal Counseling**

Quality assurance or "QA" is a process where certain ranks in NFR review EMS reports and use their knowledge of the job to ensure that the EMS reports comply with City standards. Pl. Dep. Tr. at 209:12–210:6. Plaintiff acknowledged that a reference document titled "Health EMS QA for Company Officers" is provided on NFR's intranet and was available to him prior to December 2020. *Id.* at 246:21–247:23, Ex. 19. The amount of time needed to complete a QA review varies depending on the nature of the underlying medical incident and can be as short as 30 seconds for a simple call such as a "lifestyle questionable" or "patient refusal." *Id.* at 243:12–244:12. Calls such as cardiac events, however, take longer to QA. *Id.* Certain QA reports are flagged for further review by the NFR Chief Medical Officer based on the nature of the underlying medical incident. *Id.* at 212:23–213:14. Plaintiff has served in a supervisory role since 2013 and is familiar with what information should be included EMS reports and accompanying medical records. *Id.* at 211:17–212:22.

The QA report at issue in the instant matter deals with a record from December 2020 ("Incident #42450"), which was flagged in February 2021 due to issues with the underlying call

because the paramedic, Nicholas Sutton ("Sutton"), did not follow proper protocol during an emergency event. Pl. Dep. Tr. at 214:19–215:10, 216:22–217:3, 218:4–22, Ex. 18; Chief Dommell Deposition Transcript ("Dommell Dep. Tr.") 11:20–15:9. Plaintiff was notified of Incident #42450 because it involved one of his employees, Nicholas Sutton, a firefighter paramedic. Pl. Dep. Tr. at 216:22–218:6. Chief Dommel and Chief McCoy spoke to Plaintiff about this medical record months before it was reviewed, in February 2021. Pl. Dep. Tr. at 218:23–220:9, 224:19–24; Chief McCoy Deposition Transcript ("McCoy Dep. Tr.") 11:8–17. Plaintiff had a conversation with Chief Dommel about the incident at the fire station. *Id.* Plaintiff agreed with the decision to conduct a medical review for Incident #42450. Pl. Dep. Tr. at 225:11–226:2.

Plaintiff was not involved in scheduling the medical review and does not know the logistics of scheduling the medical review. *Id.* at 226:6–23, 227:10 –228:2, 235:21–236:6. The medical review of Incident #42450 involved Chief Dommel, Chief Paquet, Captain DeYoung (the EMS coordinator), and Dr. Barry Knapp. *Id.* at 235:21–236:18. During the medical review, Plaintiff answered questions from the medical review participants (Dommel, Paquet, DeYoung, and Dr. Knapp) about Sutton and his previous performance as a paramedic. *Id.* at 237:6–238:14. Plaintiff also told Dr. Knapp that his QA should not have been graded as it was once Plaintiff had reviewed the record for Incident #42450. *Id.* at 238:19–239:4. Then, Sutton testified to the medical review panel with Plaintiff in the room with him. Pl. Dep. Tr. at 239:7–240:2. After Sutton's testimony, both of them left. *Id.*

Plaintiff usually delegates the QA reviews to the lieutenant at his fire station, but Plaintiff, as the supervisor, was responsible for the QA reports and would complete them if the lieutenant was not able to do them. Pl. Dep. Tr. at 220:10–221:7. Plaintiff completed a QA report, which included a review of Incident #42450, because a Chief Dommel called Plaintiff while he was on

vacation and asked Plaintiff to assist with reducing a backlog of reports. *Id.* at 222:1–223:3, 229:17–19. Chief Dommel did not call Plaintiff to complain about QAs that Plaintiff completed previously. *Id.* at 228:15–229:25. Plaintiff overlooked the call for Incident #42450 and scored it a 5 when it should have been a 1. *Id.* at 223:1–224:2. If Plaintiff had taken the time to read the report for Incident 42450 when he completed the QA review, he would have recognized that Sutton did not take the proper steps with the patient and he would have scored a 1 instead of a 5 for QA purposes. *Id.* at 223:18–224:8; Dommel Dep. Tr. 41:24–43:16.

Plaintiff does not know if anyone else in NFR has been written up for scoring a QA a 5 when it should have been a 1, and he is not familiar with every reprimand or counseling from a captain or Battalion Chief to a subordinate regarding a QA issue. Pl. Dep. Tr. at 231:16–25, 233:2–18, 234:25–235:7. Plaintiff does not know, and cannot dispute, whether his QA review of Incident #42450 was part of a block of 15 QA reviews that he did in 11 minutes on the same date in December 2020. Pl. Dep. Tr. at 302:24–304:1. Incident #42450 was one of the block of 15 QA reviews that Plaintiff completed in 11 minutes in December 2020. Dommel Dep. Tr. 32:19–24.

NFR's General Order ADM-007, which outlines NFR's disciplinary procedures, states that employees of NFR "shall acknowledge by signature any situation where disciplinary action is initiated against them," which serves as "documentation that an employee had been informed of the fact that formal disciplinary action is taking place or pending." Pl. Dep. Tr. at 248:12–23, 250:1–9, Ex. 20. Plaintiff was issued verbal counseling for the issues with the QA, which was documented in writing on a counseling form by Chief Dommel, who kept the form for his personal records and did not send the form up the chain of command or to any other employees. McCoy Dep. Tr. 32:14–35:23. Chief McCoy and Chief Dommel agreed that the issue with the QA should be documented, but not necessarily disciplined under the City's discipline policy. McCoy Dep. Tr.

15

54:25-60:1; Brooks Dep. Tr. 22:12-24:12, 28:7-29:1, 33:25- 37:7; Dommel Dep. Tr. 27:20-28:7, 31:1–32:18. Plaintiff has used a similar documentation technique for his subordinates. Pl. Dep. Tr. at 263:7–12. Chief Dommel did not become aware of the instant lawsuit until in or about August 2021. Dommel Dep. Tr. 47:5–48:20.

Plaintiff had never seen Chief Dommel's written information about him on an Employee Counseling Form and had never been asked to acknowledge by his signature any disciplinary action. Pl. Dep. Tr. at 250:13–251:1; 255:12–15. Plaintiff has not reviewed his personnel files to confirm whether there is any documentation of the QA issue in his files, and he only "assumed" that Chief Dommel was going to put a counseling form in his file. *Id.* at 258:7–259:3, 260:1–10, 261:14–262:13. Plaintiff does not know what Chief Dommel did with the form and does not know whether the counseling form in his personnel file. *Id.* at 262:14–18, 265:5–8. Chief Dommel did not put the counseling form in Plaintiff's personnel file. Dommel Dep. Tr. 12:12–25, 35:3–22; Brooks Dep. Tr. 33:25–34:8. Plaintiff has not spoken to all the direct reports of Deputy Chiefs, and does not know if anyone else has ever received instruction from a Deputy Chief to document or discipline a subordinate about a minor issue. Pl. Dep. Tr. at 266:2–267:14, 267:25–268:6.

No one ever told Plaintiff that Chief Brooks was mad or otherwise upset about Plaintiff filing a lawsuit, and he never saw a document that Chief Brooks was mad that he filed a lawsuit. *Id.* at 271:14–272:7, 275:17–19. Chief Brooks did, however, send an email about QAs, in which he "appeared aggressive" and other employees "didn't know where it was coming from." *Id.* at 276:22–277:12, 297:11–14, 311:24–312:6, 315:23–316:10. Plaintiff did not mention Chief Brooks by name and title in any lawsuit or EEOC proceeding until the instant Amended Complaint. *Id.* at 281:17–282:15, 283:17–284:6, 289:6–290:18, Ex. 22, 23, 24, 25; Brooks Dep. Tr. 8:7–16; Dommel Dep. Tr. 21:16–21:20; 45:7–17.

On March 26, 2021, Lieutenant Giagnacovo (white male) was verbally counselled by his supervisor, Battalion Chief Ronald Mann, Jr., for giving a medical record a score of 5 out of 5 that should not have been rated a score of 5. Norfolk Dep. Tr. 47:3–49:3; 68:7–21; McCoy Dep. Tr. 27:16–29:3, 30:24–31:2. Chief Williams and Chief Paquet provided notification to Chief Brooks that Captain Plude (white male) received a verbal counseling on April 2, 2021, for the same QA issue as Lieutenant Giagnacovo for doing QAs incorrectly in the view of Chief Williams and Chief Paquet. City Dep. Tr. 50:5–51:23; 68:7–21. Battalion Chief John Weaver notified Chief Brooks that Captain Calaman (white male) was verbally counselled on August 27, 2021 for issues related to how he completed QAs of medical records. City Dep. Tr. 52:2–17; 68:7–21; McCoy Dep. Tr. 27:16–28:16; Brooks Dep. Tr. 32:25–33:15.

**Plaintiff's Current Status with NFR**

Plaintiff participated in the 2021 Battalion Chief promotional process and was listed first on the Certified Eligible List. Norfolk Dep. Tr. at 20:16–21:11. Plaintiff was selected to serve in a temporary capacity as an acting Battalion Chief—a superior supervisory position than his current rank of captain—by the head of NFR, Chief DiBacco, in place of a Battalion Chief on medical leave. Pl. Dep. Tr. at 66:1–15, 251:12–254:11; McCoy Dep. Tr. 48:25–50:25. Chief McCoy and Chief Brooks recommended to Fire Chief DiBacco that Plaintiff serve in that position. McCoy Dep. Tr. 48:25–50:25; Brooks Dep. Tr. 37:25–38:14, 39:23–41:3.

### III.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). When considering a motion for summary judgment, a court must view the facts—and inferences derived from the

facts—in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

When the nonmoving party bears the burden of proof at trial, the nonmoving party's response must "go beyond the pleadings" and utilize affidavits, depositions, answers to interrogatories, admissions on file, etc. to "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal citations omitted). A nonmoving party must offer more than unsupported speculation or conclusory statements to withstand summary judgment. *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir. 1986); *see also Anderson*, 477 U.S. at 249–250 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted). Accordingly, summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case." *Celotex*, 477 U.S. at 322–323.

Evidence produced for or against a motion for summary judgment must be admissible at trial, although it does not need to be produced in an admissible form. *Id.* at 323–324. Moreover, pursuant to Local Civil Rule 56(b):

> "Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

L. Civ. R. 56(b). Accordingly, this Court must decline to consider evidence that is inadmissible or does not comport with Local Civil Rule 56(b), including statements that are purportedly supported by inaccurate citations to the record, not supported by citations at all, or otherwise fail to controvert a material fact alleged by Defendant.

## IV.   DISCUSSION

### A.   Wise is entitled to summary judgment on Count I of Plaintiff's Amended Complaint because Plaintiff's claims are time-barred.

Wise argues that Plaintiff's claims under Count I are time-barred. Wise Mem. Supp. at 19–20. The statute of limitations in 42 U.S.C. §§ 1981, 1983 and equal protection claims is two years. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (citing *Lewis v. Richmond City Police Dept.*, 947 F.2d 733, 735 (4th Cir.1991). Courts must focus properly on "the time of the discriminatory acts" when determining the date on which the limitations period begins. *Hanover Cty. Unit of the NAACP v. Hanover Cty.*, 461 F. Supp. 3d 280, 294 (E.D. Va. 2020) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)); *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982) ("[T]he filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition.").

In this case, Plaintiff claims that Wise discriminated against him by denying his request for a waiver on January 3, 2019. Moreover, this Court has already held that January 3, 2019 is the operative start date for the statute of limitations in Plaintiff's discrimination claim. *Mills v. City of Norfolk, Virginia*, No. 2:20CV521 (RCY), 2020 WL 7630647, at *3 (E.D. Va. Dec. 22, 2020) ("Mills I") ("Plaintiff was first informed that his request for the Waiver was denied by Chief Wise on January 3, 2019. . . . The Court finds that the [alleged] adverse employment decision occurred when Plaintiff was first informed of the denial of the Waiver."). Thus, Plaintiff would have needed

to bring the instant discrimination claims against Wise by January 3, 2021. Plaintiff did not file the instant matter, however, until April 12, 2021, more than three months beyond the applicable statute of limitations period.

Moreover, Plaintiff does not contest Defendant's argument that his claims against Wise are time-barred, and therefore, Plaintiff concedes that his claims are time-barred. L. Civ. R. 56 ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."); *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (holding that a court may rule in favor of the movant based on the "uncontroverted bases asserted therein"); *Chamblee v. Old Dominion Sec. Co., L.L.C.*, No. 3:13-CV-820, 2014 WL 1415095, at *8 (E.D. Va. Apr. 10, 2014) ("[Plaintiff] did not respond to the arguments made by any of the defendants with regards to Counts IX and X. As a result, [Plaintiff] abandoned these claims."); *Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, No. 3:12-CV-771, 2013 WL 4061259, at *3 (E.D. Va. Aug. 9, 2013) (citing *Cureton v. U.S. Marshal Serv.*, 322 F. Supp. 2d 23, 27 (D.D.C. 2004)) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the case."). For these reasons, the Court finds that Wise is entitled to judgment as a matter of law on Count I of Plaintiff's Amended Complaint.

**B.    Norfolk is entitled to summary judgment on Count II of Plaintiff's Amended Complaint because Plaintiff has failed to prove that he suffered an adverse employment action.**

A plaintiff can establish illegal retaliation under equal protection and 42 U.S.C. §§ 1981, 1983 by proving that (1) he engaged in protected activity; (2) he suffered a materially adverse action at the hands of his employer; and (3) the employer took the materially adverse action

because of the protected activity. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67–68 (2006); *Strothers v. City of Laurel*, 895 F.3d 317, 327 n.3 (4th Cir. 2018); *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 825–26 (E.D. Va. 2016). A "materially adverse action" under the second element is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. 53, 68 (2006). After a plaintiff establishes a prima facie case, an employer can then defend itself by "producing evidence of a legitimate, non-discriminatory reason for taking the adverse employment action." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 540 (4th Cir. 2003). The burden then shifts to the Plaintiff to "show that the employer's proffered permissible reason for taking an adverse action is actually a pretext for discrimination" or "not its true reasons." *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007).

In this case, it is undisputed that Plaintiff engaged in protected activity by filing the instant lawsuit. The parties disagree, however, on whether Plaintiff suffered a materially adverse action. The evidence shows that Plaintiff was subjected to a random drug test pursuant to a standard Norfolk drug testing policy—which he passed—and verbal counseling for performing a work function incorrectly, the latter of which was documented for his direct supervisor's personal records but not documented in Plaintiff's permanent employee file. The evidence also supports that NFR's disciplinary process requires official, written disciplinary action to be presented to the employee at issue and signed, which did not occur in Plaintiff's case. There is no evidence to support that Plaintiff was subjected to any other consequences after he, admittedly, performed a work function incorrectly.

The Court finds that having to participate in a random drug screening is not a materially adverse action. *McKenzie-El v. Am. Sugar Refinery, Inc.*, No. CV RDB-20-0917, 2020 WL

7489021, at *6 (D. Md. Dec. 21, 2020), aff'd sub nom. *McKenzie-El v. Am. Sugar Ref., Inc.*, No. 21-1089, 2021 WL 5412341 (4th Cir. Nov. 19, 2021) ("[R]equiring the Plaintiff to take a drug test does not constitute an adverse employment action."); *Smith v. R.J. Reynolds Tobacco Co.-Packaging Div.*, 2003 WL 355646, at *4 (M.D.N.C. Feb. 11, 2003) (regarding a retaliation claim, "[P]laintiff has not presented any evidence to show that the drug test negatively impacted his employment. As a result, [plaintiff] is unable to make a prima facie case of retaliation as it relates to the drug test."); *see also Liggins v. G.A. & F.C. Wagman, Inc.*, No. 5:18-CV-38, 2019 WL 4039635, at *3 (W.D. Va. Aug. 27, 2019) ("[A] drug test, . . . performed pursuant to an established company policy, does not rise to the level of an adverse employment action.").

Furthermore, the Court finds that the verbal counseling Plaintiff received is not a materially adverse action because it did not result in any collateral consequences. "Reprimands without collateral consequences are akin to non-actionable snubbing, antipathy, and petty slights . . . [and] cannot be characterized as 'adverse.' Because reprimands without collateral consequences are not adverse, they would not dissuade a reasonable employee from engaging in protected activity . . . ." *Hinton*, 185 F. Supp. at 832; *Harris v. Herring*, 2021 WL 100651 *7 (E.D. Va. Jan. 12, 2021) ("[C]ourts in this circuit have repeatedly held that . . . reprimands, performance improvement plans, and negative performance evaluations do not constitute materially adverse action[s]." (citing *Parsons v. Wynne*, 221 F. App'x 197, 198–99 (4th Cir. 2007)); *Hughes v. Navy Fed. Credit Union*, E.D. Va. No. 1:10-CV1430, 2012 WL 32404, at *12 (E.D. Va. Jan. 4, 2012) ("The Fourth Circuit has affirmed summary judgment for employers when the alleged retaliatory acts included 'receiving unfavorable assignments, verbal counseling, unfavorable reviews, and denial of opportunities for advancement' because these occurrences would not discourage a reasonable employee from filing an EEOC Charge.") (quoting *Gordon v. Gutierrez*, 2007 WL 30324, at *9

(E.D.Va.2007), *aff'd*, 250 Fed. Appx. 561 (4th Cir.2007)). Therefore, Norfolk did not take any materially adverse actions against Plaintiff.

Even if the drug test and verbal counseling Plaintiff experienced qualified as materially adverse actions, Plaintiff has failed to prove at summary judgment that Norfolk took those actions because Plaintiff filed the instant lawsuit. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) ("[U]nlike [disparate treatment] discrimination plaintiffs, retaliation plaintiffs are limited to traditional principles of but-for causation and must be able to prove that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.") (internal quotations omitted). Plaintiff has offered no evidence to support that his drug test was not part of NFR's standard random drug test procedures and admits that the timing of the drug test in relation to the filing of this lawsuit was a "coincidence." Pl. Dep. Tr. at 204:14–17, 245:2–9. Moreover, Plaintiff admits that he completed the QA at issue incorrectly, a mistake that Plaintiff made *before* filing the instant lawsuit, and other employees have received verbal counseling for the same or similar conduct. Thus, Plaintiff has also failed to prove but-for causation and pretext. For these reasons, there is no dispute as to any issue of material fact regarding Count II of Plaintiff's Amended Complaint, and Norfolk is entitled to judgment as a matter of law.

**C.      Norfolk is entitled to summary judgment on Count III of Plaintiff's Amended Complaint because Plaintiff has failed to prove that he was subjected to a hostile work environment based on race or in retaliation for protected activity.**

To state a hostile work environment claim based on race, Plaintiff must prove that: (1) he experienced unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207–08 (4th Cir. 2019) (citing *Bass v. E.I. DuPont de Nemours & Co.*,

324 F.3d 761, 765 (4th Cir. 2003)). Under this standard, the harassment must be "so severe or pervasive as to alter the conditions of [Plaintiff's] employment and create an abusive or hostile atmosphere. The severe or pervasive element has both a subjective and objective component. [Plaintiff] must show that he did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Id.* at 208 (citing *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)). In determining severity or pervasiveness, courts must consider "all the circumstances, including the frequency of the discriminatory conduct; . . . whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citing *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)).

In this case, there is absolutely no evidence to support Plaintiff's hostile work environment claim. Plaintiff alleges that he was "ostracize[d] and shun[ned]" by Norfolk based on his race, but he does not allege any specific actions by Norfolk to support these claims, other than that he was subjected to a random drug screening and verbal counseling. For the same reasons discussed regarding Count II of Plaintiff's Amended Complaint, there is nothing in the record to suggest that Plaintiff's drug test and verbal counseling were because of his race. Even if Plaintiff could create some dispute of material fact as to whether the drug test and verbal counseling were based on Plaintiff's race, those two instances alone are not "severe or pervasive" enough to constitute a hostile work environment, even if they were paired with other examples of ostracization and shunning. *See Watson v. Va. Dep't of Agric. & Consumer Servs.*, Civil Action No. 3:19-cv-466, 2020 U.S. Dist. LEXIS 44253, at *12 (E.D. Va. Mar. 12, 2020) (dismissing case with prejudice in which the plaintiff's coworkers treated her with indifference, would not speak to her, slammed doors in her presence, and extended daily lunch invitations to all other non-Black team members,

intentionally ignoring her); *Perkins*, 936 F.3d at 208 ("[R]ude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable . . . .") (internal citations and quotations omitted).

Plaintiff's retaliatory hostile work environment claim fails for similar reasons. "[A] hostile work environment could amount to actionable retaliation, but only if it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 600 (D. Md. 2011) (internal quotations omitted). To prove a retaliatory hostile work environment claim, Plaintiff must establish: "(1) he engaged in protected activity; (2) the agency took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action." *Id.* at 600. Again, as discussed regarding Count II, the drug test and verbal counseling Plaintiff received do not qualify as materially adverse actions. But even if they did, there is no evidence to support that they would not have occurred but for Plaintiff filing the instant action. Therefore, there is no dispute as to any material fact regarding Count III, and Norfolk is entitled to judgment as a matter of law.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are **GRANTED** and their Motions to Sever and Motions to Dismiss are **DISMISSED** as moot.

The Clerk is **DIRECTED** to send a copy of this Order to the parties and all counsel of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 6 , 2022

Raymond A. Jackson
**United States District Judge**

25